IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| CRACKER BARREL OLD COUNTRY STORE, INC.,<br>        Plaintiff, | |
| vs. | No.  3-07-0303 |
| CINCINNATI INSURANCE COMPANY,<br>     Defendant | Judge  John T. Nixon |
| | Magistrate Judge John S. Bryant |

## POST SUMMARY JUDGMENT HEARING BRIEF

## OF THE CINCINNATI INSURANCE COMPANY

_____

   The Cincinnati Insurance Company ("Company"), for its Post Summary Judgment Hearing Brief in further support of its Motion for Summary Judgment and in opposition to Cracker Barrel's Motion for Summary Judgment, Motion to Strike and reasserted Opposition to the filing of the Report of Donald Bendure and reasserted Motion to Bar Bendure, states:

# TABLE OF CONTENTS

I.      Summary of the facts……………………………………………………………1

II.     Cincinnati's motion for summary judgment should be granted and Cracker Barrel's motion for partial summary judgment should be denied because Cracker Barrel has not proven that it is entitled to coverage for the EEOC Lawsuit……………………………2

        A.      Cracker Barrel has not proven that the EEOC Lawsuit is a "claim"....................3

        B.      Cracker Barrel has not proven that the EEOC Lawsuit is a "claim" that was first made during the Policy Period of any of the Cincinnati Policies...........................6

        C.      Because no "claim" was made against Cracker Barrel during the Policy Period, Cincinnati has no duty to defend or indemnify Cracker Barrel for the EEOC Lawsuit………………………………………………………………............7

III.    Donald Bendure should be barred from testifying as an expert witness in this case and his report should be stricken and not considered when ruling on the pending summary judgment motions………………………………………………………………..14

        A.      Bendure should be barred from testifying as an expert witness in this case……..15

        B.      Bendure's report should be stricken and not considered when ruling on the pending summary judgment motions……………………………………….........18

IV.     The "opinions" given by Bendure in his report are legally and factually unsupported in any event………………………………………………………………………....19

        A.      Bendure's opinions do not change the fact that Cracker Barrel did not view the Policy as a duty to defend policy since it, rather than Cincinnati, selected counsel and controlled the defense of "claims"………………………………………..…19

        B.      Bendure's "opinion" that Cracker Barrel requested that Cincinnati defend the EEOC Lawsuit is unsupported by the record……………………………………20

        C.      Bendure's opinion in Section D of his report that the EEOC Lawsuit is a "claim" is an impermissible and incorrect legal conclusion……………………….....…20

        D.      The rest of the report is factually and legally unsupported………………………21

CONCLUSION……………………………………………………………………..…22

On October 19, 2010 this Court heard oral argument on the motions for summary judgment that were filed by Cracker Barrel and Cincinnati Insurance Company. Cracker Barrel filed a partial motion for summary judgment on the issue of whether Cincinnati had a duty to defend a lawsuit that was filed by the Equal Employment Opportunity Commission (EEOC) against Cracker Barrel after the Cincinnati Policy expired. Cincinnati filed a motion for summary judgment asking this Court to find that it owed Cracker Barrel no duty to defend or indemnify the EEOC Lawsuit. Following oral argument, this Court requested that the parties file post-hearing briefs.

The grounds for granting Cincinnati's Motion for Summary Judgment and for denying Cracker Barrel's Motion for Summary Judgment have been discussed in the numerous pleadings Cincinnati filed in this litigation, and Cincinnati refers this Court to the arguments made in those pleadings. Cincinnati, in this post-hearing brief, will summarize the reasons why summary judgment should be granted to Cincinnati and address the arguments made by Cracker Barrel at oral argument through which Cracker Barrel sought to confuse the issues involved in this case. This post-hearing brief also responds to the arguments made in the expert witness report of Donald Bendure and reasserts Cincinnati's motion to strike Donald Bendure's testimony and to bar Donald Bendure from testifying as an expert witness in this case.

I.     **Summary of the facts.**

On August 11, 2004 the Equal Employment Opportunity Commission filed a lawsuit against Cracker Barrel. Cracker Barrel was served with the EEOC Lawsuit on September 19, 2004. Cracker Barrel seeks coverage and defense for the EEOC Lawsuit under a Policy issued to it by Cincinnati Insurance Company. The Cincinnati Policy provides coverage only for "claims"

1

that are first made during the Policy Period not for lawsuits like the EEOC Lawsuit which was served on Cracker Barrel after the last Policy had expired.

Cincinnati issued five employment practice liability insurance policies to Cracker Barrel, which were in effect for the policy periods of June 1 2000 through August 1, 2000; August 1, 2000 through August 1, 2001; August 1, 2001 through August 1, 2002; August 1, 2002 through August 1, 2003 and August 1, 2003 through August 1, 2004. [Doct. 131 SOF, ¶1-5] Therefore, the "claim" must be first made between June 1, 2000 and August 1, 2004.

The EEOC is the only Plaintiff in the EEOC Lawsuit, and is the only party alleging the claims made in that lawsuit. [Doct. 131 SOF, ¶46-47, 49] It is undisputed that the EEOC Lawsuit is based on and emanates from ten Charges of Discrimination. It is undisputed that nine of those Charges – Hubbard, O'Connor, Mandeville, Lerche, Burris, Waterstraat, Bernhard-Engstrom, McReynolds and Hughes-Brooks -- were filed and served on Cracker Barrel before the June 1, 2000 inception date of the Cincinnati Policies. [Doct. 131 SOF ¶24-27, 29, 31-34] As indicated in the timeline provided to this Court during oral argument, a copy of which is attached to this post-hearing brief at Exhibit A, these charges were filed as early as December 1999 and through April 2000. Each of these nine Charges are "claims" under the Cincinnati Policies, since a "claim" is defined to include an administrative proceeding commenced by the service of a charge. [Doct. 131 SOF ¶34, 47] These charging parties complained of wrongful acts that occurred both before and during the June 1, 2000 to August 1, 2004 Policy Period. [Doct. 131 SOF ¶25-27, 29, 31, 32, 33, 34-35]

Valerie Sucich filed a charge of discrimination during the August 1, 2000 to August 1, 2001 policy period of the Cincinnati Policies, and Ms. Sucich is also identified as a Charging Party in the EEOC Lawsuit. [Doct. 131 SOF ¶36, 47] The Sucich Charge did not allege class-wide sexual harassment or any racial harassment claims as did the other Nine Charges that were

filed before inception of the Cincinnati Policies and from which the EEOC Lawsuit emanated. [Doct. 131 SOF ¶36]

Through interrogatories served on November 15, 2005, the EEOC identified 41 additional persons who were subjected to racial or sexual harassment or discrimination. None of these 41 additional persons filed Charges of Discrimination against Cracker Barrel during the June 1, 2000 to August 1, 2004 policy periods. [Doct. 131 SOF ¶70, 71, 72, 73]

Cracker Barrel first gave notice of the EEOC Lawsuit to Cincinnati on July 22, 2005. [Doct. 131 SOF ¶54] Cracker Barrel did not request that Cincinnati defend the EEOC Lawsuit. Rather, Cracker Barrel retained counsel, defended the EEOC Lawsuit and controlled the defense of the EEOC Lawsuit. [Doct. 131 SOF ¶56-60] In fact, Cracker Barrel did not expect Cincinnati to defend the EEOC Lawsuit. [Doct. 131 SOF ¶56, 60] This was consistent with the agreement between Cracker Barrel and Cincinnati that Cracker Barrel, rather than Cincinnati, would defend the claims for which it sought coverage under the Policies, and so Cincinnati would not have a duty to defend. [SOF ¶23] In accordance with that agreement, Cracker Barrel did not give Cincinnati notice of the Sucich charge of discrimination at the time it was made, but rather defended that charge and did not request that Cincinnati defend it. [Doct. 131 SOF ¶38-40] Therefore, Cracker Barrel did not recognize or treat the Cincinnati Policies as duty to defend policies. Instead, it viewed the policies as reimbursement policies, where only the defense costs incurred in defense of covered claims would be reimbursed.

A condition precedent to coverage under the Cincinnati Policies is the requirement that written notice of a claim must be provided to Cincinnati as soon as practicable. [Doct. 131 SOF ¶53] Pursuant to the agreement reached between Cracker Barrel and Cincinnati, Cracker Barrel was required to give written notice as soon as practicable of claims whose value might exceed the policy deductible or which involved a class action. [Doct. 131 SOF ¶23] It is undisputed that

3

Cracker Barrel gave written notice to Cincinnati of the EEOC Lawsuit – which contained class allegations -- ten months after it was served and almost one year after filing, a time period that is not as soon as practicable. [Doct. 131 SOF ¶46, 54]

Chubb had issued to Cracker Barrel an Umbrella Policy that was in effect for the policy period of August 1, 1999 through August 1, 2000, and under which Chubb was obligated to defend Cracker Barrel against the EEOC Lawsuit. Chubb even entered into a settlement agreement with Cracker Barrel. [Doct. 131 SOF ¶ 76-80, 81] Pursuant to Part IV., Section IX, Cincinnati has no obligation to defend the EEOC Lawsuit given Chubb's obligation to do so, and has no obligation to indemnify. [Doct. 131 SOF ¶82]

## II. Cincinnati's motion for summary judgment should be granted and Cracker Barrel's motion for partial summary judgment should be denied because Cracker Barrel has not proven that it is entitled to coverage for the EEOC Lawsuit.

The issue in this lawsuit is whether Cincinnati had a duty to defend and indemnify a lawsuit that was filed by the EEOC after the Cincinnati Policies had expired. Cracker Barrel agrees that the Cincinnati Policies provides coverage only for "claims" that were first made during their respective policy periods, and that the "claim" must be made between June 1, 2000 and August 1, 2004. The attorneys fees and costs Cracker Barrel incurred defending the EEOC Lawsuit and the money it paid to settle that lawsuit are not covered unless the EEOC Lawsuit is a "claim" that was first made during the June 1, 2000 and August 1, 2004 Policy Period. Cincinnati is not obligated to defend or indemnify the EEOC Lawsuit because it is not a "claim" and because it was not first made between June 1, 2000 and August 1, 2004. Therefore, Cincinnati's motion for summary judgment should be granted and Cracker Barrel's motion for partial summary judgment should be denied.

### A. Cracker Barrel has not proven that the EEOC Lawsuit is a "claim".

A "claim" is defined in the Policy as

4

> a civil, administrative or arbitration proceeding commenced by the service of a complaint or charge, which is brought by a past, present or prospective 'employee(s)' of the 'insured entity … (Policy, Part II, Section V.B.)

The definition of "claim" does not look at what the civil proceeding evolves from, rather it focuses on how and when the proceeding was commenced and by whom the proceeding was brought. While the EEOC Lawsuit is civil proceeding commenced by the service of a complaint, it was not brought by a past, present or prospective employee of Cracker Barrel. It is undisputed that the EEOC Lawsuit is a civil proceeding commenced by the service of a complaint, which was brought by the EEOC, not an employee of Cracker Barrel. Because the EEOC Lawsuit is not a "claim", Cincinnati has no duty to defend or indemnify the EEOC Lawsuit.

At oral argument, Cracker Barrel suggested a reading of the definition of "claim" that made no sense and ignored the Policy wording. According to Cracker Barrel: "the complaint or charge is brought by a past, present, or prospective employee, even though the civil administrative or arbitration proceeding is simply commenced". [Tr. p. 50] The Policy is not written such that the civil, administrative or arbitration proceeding is "simply commenced" as Cracker Barrel claims. Cracker Barrel ignores the word "by". A "claim" is "a civil, administrative or arbitration proceeding commenced **by** the service of a complaint or charge". (Emphasis added). Even under Cracker Barrel's interpretation of the Policy, the EEOC Lawsuit is not a "claim" because the EEOC Complaint was brought by the EEOC, not by a past, present or prospective employee.

Cracker Barrel also incorrectly argued at oral argument that the administrative proceeding referenced in the definition of "claim" can only be brought by an administrative agency like the EEOC. On the contrary, a charge of discrimination filed by an employee before the EEOC is an administrative proceeding. This argument is also irrelevant because Cracker

5

Barrel contends that Cincinnati must defend a civil proceeding that was brought by the EEOC. Under the unambiguous Policy terms, the EEOC Lawsuit is not a "claim".

**B.     Cracker Barrel has not proven that the EEOC Lawsuit is a "claim" that was first made during the Policy Period of any of the Cincinnati Policies.**

The Cincinnati Policy is not an occurrence policy under which coverage would exist simply because wrongful acts occurred during the policy period. Thus, the fact that EEOC Complaint alleged that wrongful acts occurred in part during the policy period does not turn the Complaint into a covered claim.

As Cracker Barrel has acknowledged in its summary judgment briefing, the Cincinnati Policy is a claims made policy that requires that the claim be first made during the policy period. Even if the EEOC Lawsuit is a "claim", Cincinnati has no obligation to defend or indemnify Cracker Barrel unless the EEOC Lawsuit is a claim that was first made during the June 1, 2000 to August 1, 2004 Policy Period.[1]

Pursuant to Part II, Section V.B., the EEOC Lawsuit, even if a "claim", was made when the EEOC Complaint was served, since a "claim" is "a civil … proceeding commenced by the service of a complaint …" and the EEOC Lawsuit is a civil proceeding that was commenced by the service of the EEOC Complaint. It is undisputed that the EEOC Lawsuit was served on

---

[1] The Insuring Clause, Section I of the Policy limits coverage and defense to "loss" resulting from "claims" first made during the "policy period":

> We will pay on behalf of the 'insureds' all 'loss' which they shall be legally obligated to pay resulting from any 'claim' first made during the 'policy period', or any 'extended reporting period' included in or endorsed to the policy, for a 'wrongful act'. [Doct. 131 SOF ¶6]

The Policy Declarations likewise limit coverage and defense to "claims" first made during the policy period:

> This insurance coverage contains claims made coverage. This insurance is limited to 'wrongful acts' for which 'claims' are first made against the 'policy insureds' during the 'policy period'. [Doct. 131 SOF ¶6]

See also paragraphs 8 through 12 of the Statement of Facts [Doct. 131] which identifies the policy period of each policy.

September 19, 2004.  It therefore was a claim made on September 19, 2004, after the Cincinnati Policy had expired.   Consequently, Cincinnati has no duty to defend or indemnify the EEOC Lawsuit.

Cracker Barrel argues that the EEOC did not first make its claim against Cracker Barrel when it served its Complaint.  Instead Cracker Barrel argues that the EEOC first made its claim against Cracker Barrel when Valerie Sucich filed a charge of discrimination with the EEOC in March 2001   because the EEOC Lawsuit arose from the Sucich charge of discrimination. Cracker Barrel therefore contends that the EEOC Lawsuit is a claim made during the August 1, 2000-August 1, 2001 Policy Period.

This argument is factually and legally erroneous.   While this argument expands the analysis beyond the four corners of the EEOC Complaint to the charges of discrimination from which the EEOC Lawsuit arose, it impermissibly picks the Sucich charge while ignoring the other nine of charges of discrimination from which the EEOC Lawsuit indisputably arose.  These nine other charges of discrimination were filed and served on Cracker Barrel before June 1, 2000.  Cracker Barrel also concedes that these nine earlier charges of discrimination are "claims" as that term is defined in the Policy, since it described these earlier charges as "claims" that were made against Cracker Barrel.  [Doct. 131 SOF ¶37; Ex. G. to Zylstra Dec., Doct. 96]  The Policy defines "claim" as an administrative proceeding commenced by the service of a charge which is brought by a Cracker Barrel employee.  [*See*, Policy, Part II Section V.B.]  Each of these nine earlier charges are an administrative proceeding commenced by the service of a charge.  These nine other charges of discrimination which, unlike the Sucich charge, contained class-wide allegations, cannot be ignored.  Pursuant to *LA Weight Loss v. Lexington Ins. Co.*, 2006 WL 689109 (Pa.Com.Pl. 2006), this Court must conclude as a matter of law that the EEOC Lawsuit

is a progression of these nine earlier charges of discrimination, and is therefore deemed to be a claim first made when the earliest of the nine charges was made. In this case, the first charge was made against Cracker Barrel by Joanne Hubbard in 1999.

Cracker Barrel's expert witness, Donald Bendure, agreed with the reasoning of *LA Weight Loss* in the August 17, 2009 Report that Cracker Barrel requested leave to file in support of its partial summary judgment motion. Appleman's, described at page 4 of Bendure's report as a well-known and respected insurance treatise, discussed *LA Weight Loss* as follows:

> In *LA Weight Loss*, … prior to policy inception, several of the insured's employees had filed administrative charges against LA Weight Loss Centers, claiming the centers discriminated against men. During the policy period, the EEOC filed a class action lawsuit against LA Weight Loss Centers for wrongful employment practices against males. The insurer denied coverage citing the claims-made and retroactive date provisions of the policy. The policy defined a Claim as follows:
>
> > Claim means a written demand or notice received by an Insured in which damages likely to be covered by this policy are alleged. Claim includes a civil action, an administrative proceeding … or an action brought by a person or entity acting on behalf of an Employee …
>
> The court found that although the EEOC filed suit during the policy period, the claim had first been made upon the insured's receipt of a notice of discriminatory practices, sent to the insured by the EEOC shortly after the employees filed their discrimination charge. (Citations omitted)

*New Appleman Insurance Practice Guide,* p. 41-12 (2008 Edition). As both Appleman's and Mr. Bendure state:

> Because the insured received the notice of the EEOC charge before the policy period, the claim was first made outside of the policy period. Accordingly, the court found that the insurer had no duty to provide coverage. (Citations omitted)

*Id.*; Doct. 119-1, p. 5. As discussed in Cincinnati's summary judgment briefs, *LA Weight Loss* applies squarely to the facts of this case. Because Cracker Barrel received notice of the EEOC Charges from which the EEOC Lawsuit arose before the policy period, the claim was first made outside of the policy period and is not covered by the Cincinnati Policy.

Recognizing that it cannot, as a matter of law, ignore all of the charges of discrimination from which the EEOC Lawsuit arose, Cracker Barrel argues that under Part IV, Section II.E. of the Policy, the EEOC Lawsuit could relate back only to the date on which the Sucich charge was served on Cracker Barrel because the "Sucich act … is the first act during the policy period". [Tr. p. 47]  However, Cracker Barrel concedes that "the other parties in this lawsuit all allege events that took place during the policy period".  [Tr. p. 51]  The evidence also bears out that Sucich did not allege the first wrongful act during the policy period as Cracker Barrel claimed. For example, Kimberly Waterstraat complained of sexual and racial harassment occurring in June through September 2000 [Doct. 131 SOF ¶31], Tiffany Bernhard Engstrom complained of sexual harassment occurring in the summer 2000 [Doct. 131 SOF ¶32], and Keyandez Hughes-Brooks complained of racial harassment occurring in June 2000 through December 2000 [Doct. 131 SOF ¶34].  Sucich complained she was sexually harassed by her co-workers between December 27, 2000 and January 12, 2001.  [Doct. 131 SOF ¶36]

Pursuant to Part IV, Section II.E, all "claims" that are based upon or arise out of acts that occurred between June 1, 2000 and August 1, 2004 are considered a single "claim" and that single "claim" is deemed to have been made when notice of the earliest "claim" was first received by Cracker Barrel.[2]  It is undisputed that the nine charges of discrimination that were

---

[2] Part IV, Section II.E. reads as follows:

Regardless of the number of policies or Coverage Parts involved, all 'claims' based upon or arising out of the same 'wrongful act' or any 'interrelated wrongful acts' shall be considered a single 'claim'.  Each 'claim' shall be deemed to be first made at the earliest of the following times:

1.      When notice of the earliest 'claim' arising out of such 'wrongful act' or 'interrelated wrongful acts' is received in writing by a 'policy insured' or by us, whichever comes first; … . [Doct. 131 SOF ¶51]

"Wrongful act" is defined at Part II, Section V. Paragraph I. of each of the Cincinnati Policies as "…any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or

served on Cracker Barrel before June 1, 2000 are "claims" and that these "claims" were made before the Cincinnati Policy incepted. As Cracker Barrel stated at oral argument, these nine other charging parties all alleged acts that took place during the policy period, and it is undisputed that the EEOC Lawsuit is based on these wrongful acts. Consequently, pursuant to Part IV. Section II.E., the EEOC Lawsuit relates back to these earlier charges of discrimination, and is deemed to be a claim made before the Cincinnati Policy incepted.

Cracker Barrel's argument that the July 29, 2004 correspondence it sent to Cincinnati "anchors" the EEOC Lawsuit into one of the Cincinnati Policies is also without merit. Part IV, Section V., upon which Cracker Barrel relies for this argument, applies only to the situation where the insured becomes aware of a "wrongful act" which is likely to give rise to a "claim" but the "claim" has not yet been made. The insured is required to provide the details identified in Section V when it gives such a notice. [3]

Part IV, Section V. of the Policy does not apply to this case for several reasons. First, it only applies to a notice of wrongful acts that could give rise to a "claim". It does not apply to the notice of an actual "claim". Another policy provision, Part IV, Section III.A., governs notices of "claims": "The 'policy insureds' shall give us written notice of any 'claim' made against the 'policy insureds' for a 'wrongful act' as soon as practicable …" Cracker Barrel's argument –

---

allegedly committed or attempted on or after the Retroactive Date, … and prior to the end of the 'policy period' … [Doct. 131 SOF ¶15]. The Retroactive Date is June 1, 2000. [Doct. 131 SOF, ¶52]

[3] Part IV, Section V. of the Cincinnati Policies reads as follows:

If prior to the end of the 'policy period' of the applicable Coverage Part, any of the 'policy insureds' first become aware of a specific 'wrongful act' they believe is likely to give rise to a 'claim', and if any of the 'policy insureds' give us written notice as soon as practicable, but prior to the end of the 'policy period' of the applicable Coverage Part, of:

A. The specific 'wrongful act'; and
B. The injury or damage which has or may result therefrom; and
C. The circumstances by which the 'policy insureds' first became aware thereof,

then any 'claim' subsequently made arising out of such 'wrongful act' shall be deemed to have been made when notice of the 'wrongful act' was first given.

that notices of "claims" are governed by Section V – impermissibly renders Section III.A. superfluous.

Second, the July 29, 2004 letter did not give Cincinnati notice of wrongful acts Cracker Barrel believed may give rise to a "claim" as Cracker Barrel's counsel claimed at the hearing. Nor did Cracker Barrel provide a listing of "potential claims" as argued by its counsel. Rather, the July 29, 2004 letter, gave Cincinnati notice of **actual "claims"** that had been made against Cracker Barrel, and provided a list of charges and lawsuits that had been brought against Cracker Barrel: "CRBL Group, Inc. hereby gives notice under the above-referenced policy, and any other applicable policies, **that claims have been made against certain of the your Insureds**." [Doct. 131 SOF ¶37] (Emphasis added) It is undisputed that all of the charges of discrimination identified in the July 29, 2004 letter and referenced by the EEOC in its Complaint are "claims".

Third, the July 29, 2004 letter does not provide the specific information required by Section V. It did not identify the specific wrongful acts that Cracker Barrel believed could lead to a "claim" and the injury or damage which Cracker Barrel believed could result from the wrongful acts, including the possibility that the EEOC might file a lawsuit against Cracker Barrel. It did not even include copies of the charges and lawsuits that were referenced in the letter. [*See*, Ex. G to Zylstra Aff.]

Cracker Barrel's last argument gives short shrift to the Policy's requirement that the claim must be first made during the Cincinnati Policy period. Completely ignoring that requirement, Cracker Barrel, citing *Drexel Chemical Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471 (Tenn.Ct.App. 1996) argues that Cincinnati must defend the entire EEOC Lawsuit because one of the allegations of the EEOC's Lawsuit makes reference to Valerie Sucich and Valerie Sucich had filed a charge against Cracker Barrel while one of the Cincinnati Policies was in effect. [Tr. p. 13-14] This argument fails because the Policy only covers a "claim" that is first made during

11

the policy period, and the EEOC Lawsuit is not a "claim" that was first made during the policy period.

The principles stated in *Drexel* do not apply to this case because *Drexel* applies only to policies that contain a duty to defend. As discussed in Cincinnati's summary judgment briefs, Cracker Barrel agreed that it, rather than Cincinnati, would defend claims, and Cracker Barrel treated the Policy as if it was not a duty to defend policy. Cracker Barrel therefore waived the Policy's "duty to defend" as a matter of Tennessee law. [*See*, Doct. 133 p. 17-18; Doct. 109 p. 19-20] Cracker Barrel cannot now rely on a case law like *Drexel*, whose holding is limited to duty to defend policies. Consequently, *Drexel* is inapplicable, and the reference to the Sucich Charge in the EEOC Lawsuit does not require that Cincinnati defend the entire EEOC Lawsuit.[4]

Cracker Barrel's argument on this last point is also factually flawed. Valerie Sucich did not make any claim against Cracker Barrel in the EEOC Lawsuit. The EEOC Lawsuit, which made allegations of class-wide discrimination or harassment, was filed by the EEOC, not Sucich. The EEOC brought an enforcement action in its own name and pursuant to its authority under Section 706 to prevent unlawful employment. The EEOC Lawsuit, as a matter of law, is not merely a proxy for victims of discrimination such as Sucich. *General Telephone Co. v. EEOC*, 446 U.S. 318, 323, 100 S.Ct. 1698, 1702 (1980). The EEOC may proceed, as it did in this case, with a suit in its own name in order to protect the public interest in ending Cracker Barrel's discriminatory practices. *Id*. In fact, the EEOC may go forward with its suit notwithstanding the fact that the charging parties settled with Cracker Barrel. *See*, *EEOC v. United Parcel Service*,

---

[4] *See*, *Board of Trustees of Michigan State University v. Continental Casualty Co.*, 730 F. Supp. 1408, 1414 (W.D. Mich. 1990), where the court held that an insurer is not required to pay defense costs for allegations of claims not covered by the policy when the policy provides that the insurer will reimburse defense costs rather than have a duty to defend, as Cracker Barrel had agreed.

12

860 F.2d 372 (10th Cir. 1988). In the end, Cracker Barrel settled with the EEOC, not with Valerie Sucich. Cracker Barrel entered into a consent decree with the EEOC. The EEOC decided how the $2 million settlement would be allocated among the aggrieved employees. [Doct. 131 SOF ¶50]

Thus, the fact that Sucich made a charge against Cracker Barrel that might be covered under the Policy does not mean that Cincinnati must defend the EEOC Lawsuit. Cincinnati did not admit that the EEOC Lawsuit is covered as Cracker Barrel has tried to argue. The correspondence that Cracker Barrel received from Cincinnati's counsel [Ex. H to Zylstra declaration] did not state that the EEOC Lawsuit is covered. The March 10, 2000 letter referred to in oral argument did not state that Cincinnati would cover claims that are first made after the Policy expired, or claims that are deemed to have been made before the Policy incepted. As discussed in Cincinnati's briefs, the March 10 letter does not replace the Policy terms. [Doct. 109 p. 18; Doct. 161 p.4]

C. **Because no "claim" was made against Cracker Barrel during the Policy Period, Cincinnati has no duty to defend or indemnify Cracker Barrel for the EEOC Lawsuit.**

The burden of proving that the EEOC Lawsuit is covered rests with Cracker Barrel. Cracker Barrel has failed to meet that burden, since it has not proven that the EEOC Lawsuit falls within the scope of coverage provided by the Cincinnati Policies. Consequently, Cincinnati's motion for summary judgment should be granted and Cracker Barrel's motion for partial summary judgment should be denied.[5]

---

[5] Several other grounds exist for affording Cincinnati this relief. Cincinnati will not burden this Court by repeating the arguments it made in its summary judgment filings in this post-hearing brief. To briefly summarize: (1) Cincinnati has no duty to defend because Chubb, who had issued a policy that was in effect before the Cincinnati Policy, had a duty to defend the EEOC Lawsuit. In fact, Chubb settled Cracker Barrel's claim for coverage of the EEOC Lawsuit. (2) Cincinnati has no duty to defend or indemnify the EEOC Lawsuit because Cracker Barrel gave late notice of the EEOC Lawsuit even under the revised notice provisions the parties had agreed to through their course of dealing. (3) Cincinnati has no duty to defend or indemnify the EEOC Lawsuit because Part IV., Section I,

13

Cracker Barrel implied at oral argument that because it paid premium for the Cincinnati Policies, they must cover the EEOC Lawsuit. An insurance policy does not provide coverage simply because an insured has paid a premium. The insured must submit a claim that is covered under the terms of the policy. In this instance, the EEOC Lawsuit is not a covered claim. That does not mean that Cracker Barrel got nothing for the premium as their counsel alluded at oral argument. Cracker Barrel got the right to select their own defense counsel and to control the defense of "claims" that were made against Cracker Barrel. This was an important right to Cracker Barrel – it did not want Cincinnati selecting counsel and controlling the defense. If a "claim" was made against Cracker Barrel during the Policy Period that fell within the scope of the Policy coverage there would be coverage. But in this particular case a "claim" was not made against Cracker Barrel during the policy period.

III.     **Donald Bendure should be barred from testifying as an expert witness in this case and his report should be stricken and not considered when ruling on the pending summary judgment motions.**

Approximately two months after briefing was closed on Cracker Barrel's partial summary judgment motion, Cracker Barrel filed a Motion to supplement its summary judgment pleadings with the Expert Report of Donald Bendure. [Doct. 119] Cincinnati opposed that motion. [See Doct. 120] Cincinnati also filed a motion to bar Donald Bendure from testifying in this litigation. [Doct. 121, 122, 171] Cincinnati reasserts both motions in this Brief, incorporates all pleadings it filed with respect to those motions as though fully set forth herein, and requests

---

Exclusion G, the prior and pending litigation exclusion, excludes coverage for that Lawsuit, since the EEOC Lawsuit arises out of the nine EEOC charges which predate the Cincinnati Policy. In addition, Cracker Barrel's motion for partial summary judgment cannot be granted in any event because (1) disputed issues of fact exist with respect to whether Part IV, Section I, Exclusion F applies to preclude coverage and defense for the EEOC Lawsuit and (2) the Policy requires an allocation between the defense of matters that are covered and those that are not covered and so Cincinnati cannot be ordered to pay all of the defense costs incurred by Cracker Barrel.

14

that these motions be granted. Cincinnati recently deposed Mr. Bendure and his deposition testimony further supports these motions.

### A. Bendure should be barred from testifying as an expert witness in this case.

Cincinnati filed a motion to bar Donald Bendure from testifying in this litigation. [Doct. 121, 122, 171] Cincinnati reasserts its motion to bar at this time. Bendure testified at deposition that his testimony will be limited to the "opinions" contained in his August 17, 2009 report. [Bendure dep., p. 8:19-9:18, 243:21-24, attached as Ex. B] Therefore, as Cincinnati stated in its previously-filed motion, Bendure's opinions are inadmissible under FRE 702, 704, 402 and 403.

Bendure summarizes and interprets some, not even all, of the pleadings that were filed in conjunction with the summary judgment motions, interprets the Policy, makes conclusions of law, and attempts to refute Cincinnati's legal arguments. Bendure gives the legal conclusion that the EEOC Lawsuit is "claim" which was made during the policy period and which Cincinnati had a duty to duty to defend. In reaching these opinions, Bendure interprets the Policy and applies the Policy terms to what he believes to be the facts of this case. However, as this Court recognized in its March 20, 2009 and March 4, 2010 Orders, the resolution of the issue of whether Cincinnati has a duty to defend the EEOC Lawsuit is a question of law for the Court to decide. In its March 4, 2010 Order, this Court held that the grounds stated by Cincinnati in support of its motion for summary judgment depend upon an interpretation of the language of the Cincinnati policies in light of the facts of this case, and "disputes over the coverage of an insurance policy require a judicial interpretation of the language of the policy and are matters of law." [Doct. 154, p. 7-8] In fact, Cracker Barrel acknowledged in its summary judgment motion that the coverage issues involve questions of law for the court to decide, and thus conceded that Bendure is unnecessary.

Therefore, the "insurance industry custom and practice" referenced in the Bendure report, and upon which he claims to be basing his "opinions", is irrelevant as a matter of law. The interpretation of the Cincinnati Policy is a question of law, and the court is guided by the case law and its interpretation of the policy terms, not an expert's opinion. *Assurance Co. v. Continental Development*, 2009 WL 1616760 (M.D.Tenn. 2009). Moreover, since this Court recognized in its March 20, 2009 Order that other insurance policies and other claims are not relevant to the interpretation and construction of the Cincinnati Policy, "insurance industry custom and practice" is likewise irrelevant, since courts interpreting and construing the provisions of an insurance policy seek to determine the intent of the parties, and therefore the meaning of contract provisions, from the words of the contract itself. [Doct. 90, p. 11] Bendure's opinions are nothing more than a series of legal conclusion on the issue of Cincinnati's obligation to defend. The Sixth Circuit requires that expert opinion that makes such legal conclusions be barred. [*See*, Doct. 122 p. 8-10]

Cracker Barrel has not contravened the overwhelming case law cited in Cincinnati's papers which bars expert testimony that interprets an insurance policy or states that an insurer had an obligation to defend or owed coverage under the policy, finding that such testimony impermissibly invades the province of the court, does not assist the trier of fact, and is not based on reliable scientific methodology. [*See*, Doct. 122 p. 8-10; Doct. 120 p. 5-9]

In its motion to bar, Cincinnati detailed the reasons why none of Bendure's opinions are admissible in this litigation. Cincinnati incorporates those arguments into this reasserted motion. This brief discusses how Bendure's deposition testimony gives additional support to Cincinnati's motion to bar Bendure.

In paragraphs A, B and C of his Report, Bendure opined that simply because the Policies contained what he claimed to be a "large deductible", Cracker Barrel had the right to the control the defense within the deductible. Bendure opined that the Policy should have contained a "large deductible endorsement" which memorialized the parties' defense obligations within and above the deductible. None of these opinions are relevant to this litigation. The issue in this litigation is whether Cincinnati is obligated to defend the EEOC Lawsuit. Cincinnati has argued that the reasoning employed by *Drexel* and the other duty to defend cases relied on by Cracker Barrel does not apply to this litigation because the parties agreed that Cracker Barrel rather than Cincinnati would defend claims. Moreover, Cracker Barrel did not treat the Policy as a duty to defend policy because it controlled all aspects of the defense, regardless of whether the deductible had been exhausted.

Bendure admitted in his deposition that the agreement between Cincinnati and Cracker Barrel governs how the Policy was really supposed to work. [Bendure dep., 141] Expert testimony is not needed to determine what Cracker Barrel's and Cincinnati's agreement was with respect to which party would control the defense and whether the Policy would be treated as duty to defend policy since there is nothing technical or specialized about these matters. Therefore, Bendure's testimony should be barred. Bendure also admitted the Policy terms cannot be amended by resort to general insurance industry custom and practice, and so his testimony regarding the insurance industry custom and practice with respect to the treatment of the defense obligation under a "large deductible" policy is admittedly irrelevant and thus inadmissible. [Bendure dep, 149:13-15]

At pages 16 through 17 of its motion to bar, Cincinnati explained why the opinion expressed in Section E of Bendure's Report that the EEOC Lawsuit is a "claim" is inadmissible

and should be barred. Bendure's deposition testimony gives another reason for barring this testimony. His claim that "it would be counter to the norm for EPLI policy coverage not to consider an EEOC lawsuit as a 'claim' under EPLI policies" is based on speculation and conjecture since he did not know how most EPLI policies define "claim". [Bendure dep., 178:20-179:6]. In fact, Bendure concedes the "norm" is irrelevant, since he admitted that whether something is a claim is dependent on how the definition is worded in the policy. [Bendure dep., 179:7-10]

In paragraph G Bendure states why he believes Cincinnati has a duty to defend the EEOC lawsuit. As discussed in Cincinnati's motion to bar, these expert opinions are inadmissible because they are legal conclusions. While Bendure's report gives an opinion on Cincinnati's duty to defend, Cracker Barrel's counsel objected to questioning Bendure about the scope of the duty to defend because that is a "legal conclusion". [Bendure dep., 234:24-235:7; 235:13-18] Thus, even Cracker Barrel concedes that Bendure is testifying about legal conclusions, which expert testimony, as discussed above, is inadmissible as a matter of law.

**B.    Bendure's report should be stricken and not considered when ruling on the pending summary judgment motions.**

Prior to oral argument, Cincinnati filed an opposition to Cracker Barrel's motion to supplement the summary judgment record with Bendure's expert report. This Court indicated at the October 19 summary judgment hearing that it would let the expert report in, but that Cincinnati could move to strike Bendure's report following the hearing. For the reasons stated in Cincinnati's motion to bar Bendure, opposition to Cracker Barrel's motion to file the Bendure report, and for the additional reasons stated in Section III.A. of this Post-Hearing Brief, Bendure's expert report should be stricken. [*See*, Doct. 120, 122, 171]

18

## IV. The "opinions" given by Bendure in his report are legally and factually unsupported in any event.

The expert report makes a series of factual and legal conclusions regarding the ultimate issue of whether Cincinnati had a duty to defend Cracker Barrel in the EEOC Litigation that are unsupported by the Policy wording, the facts and the law. If this Court does not grant Cincinnati's motion to strike the Bendure report, Cincinnati submits that the opinions contained in that report have no effect on the pending summary judgment motions for the following reasons.

### A. Bendure's opinions do not change the fact that Cracker Barrel did not view the Policy as a duty to defend policy since it, rather than Cincinnati, selected counsel and controlled the defense of "claims".

As discussed above, Cracker Barrel cannot rely on *Drexel* to impose a burden on Cincinnati to defend the EEOC Lawsuit just because it contains a reference to the Sucich charge because Cracker Barrel did not treat the Policy as a duty to defend Policy since it selected counsel and controlled the defense of "claims". Cracker Barrel and Cincinnati have fully briefed the issue of whether Cracker Barrel treated the Policy as a reimbursement rather than a duty to defend policy. Bendure states the record he reviewed did not imply that Cracker Barrel agreed the policies were not duty to defend policies. However Bendure admitted at his deposition that he did not review the entire summary judgment record. For example, he did not review the deposition testimony of Michael Zylstra, Cracker Barrel's Rule 30(b)(6) witness, who had testified at his deposition that he did not expect Cincinnati to control the defense of the EEOC Lawsuit or charges of discrimination. [Bendure dep., 122:11-24] Thus, Bendure's opinions in this regard have no evidentiary basis and are wholly speculative – another reason why they should be barred.

19

Bendure "opines" that the Policy should have been underwritten to include a "large deductible endorsement" and a "collateral side agreement" identifying the insured's obligations because that is the usual custom and practice in the insurance industry. As discussed above, the insurance industry custom and practice is not relevant to the interpretation of the Cincinnati EPLI Policy, and the terms and provisions **of that policy**. As also discussed above, Bendure could not identify a single employment practices liability insurer who issued such a "large deductible endorsement" or "collateral side agreement".

**B.** **Bendure's "opinion" that Cracker Barrel requested that Cincinnati defend the EEOC Lawsuit is unsupported by the record.**

This opinion simply repeats the argument that Cracker Barrel made in its summary judgment briefs, to which Cincinnati has responded. In fact, Bendure contradicted this opinion in his deposition where he acknowledged that Cracker Barrel did not expect Cincinnati to take over the control of the defense regardless of whether the claim exceeded the deductible. [Bendure dep., 154-5] Consequently, Cracker Barrel did not request that Cincinnati defend the EEOC Lawsuit. As Michael Zylstra stated at his deposition, the parties agreed that Cracker Barrel rather than Cincinnati would defend claims and so Cracker Barrel did not expect Cincinnati to "pick up the defense or control the defense of the litigation or the EEOC charges". [Doct. 131 SOF ¶40]

**C.** **Bendure's opinion in Section D of his report that the EEOC Lawsuit is a "claim" is an impermissible and incorrect legal conclusion**

Again, Bendure simply repeats the arguments Cracker Barrel made in its summary judgment pleadings with respect to the issue of whether the EEOC Lawsuit is a "claim" as that term is defined in the Cincinnati Policy. As Cincinnati has argued in its briefs, at oral argument

and in this post-hearing brief, Cracker Barrel's argument is unsound. This issue is a question of law for the court to resolve, and is an impermissible subject for expert testimony in any event.

Bendure makes one new argument in his report not previously made by Cracker Barrel. He claims that it would be "counter to norm" for EPLI policy coverage not to consider an EEOC lawsuit as a "claim" under EPLI policies. As discussed above, this opinion is based on speculation and conjecture since Bendure did not know how other EPLI policies define "claim". [Bendure dep., 178:20-179:6]. In fact, Bendure concedes the "norm" is irrelevant, since he admitted that whether something is a claim is dependent on how the definition is worded in the policy at issue. [Bendure dep., 179:7-10]

### D. The rest of the report is factually and legally unsupported.

Paragraph F of Bendure's report parrots Cracker Barrel's erroneous argument about how the EEOC Lawsuit could be claim made during the Policy Period. Just like Cracker Barrel, Bendure ties the EEOC Lawsuit to just the Sucich charge and ignores the nine earlier charges of discrimination. As Cincinnati has discussed in its summary judgment papers, at oral argument and in this brief, this argument is factually and legally unsupported. The EEOC Lawsuit indisputably arises from these nine earlier charges of discrimination, and, if it is a "claim", it, as a matter of law, is a claim made before the Cincinnati Policy incepted and outside of the Policy Period.

In Paragraph G Bendure repeats Cracker Barrel's argument that Cincinnati owes an obligation for defense solely because the EEOC Lawsuit referenced the Sucich charge. As discussed in Cincinnati's summary judgment papers, at oral argument, and in this brief, this argument is also factually and legally erroneous. Given that Bendure attempts to give opinions on conclusions of law, it should be stricken in any event.

In Paragraph H, Bendure argues that the Cincinnati policy provides coverage for "continuous course of conduct claims", that is, claims that begin before the Cincinnati Policy incepted but that allege wrongful acts that continue into the Policy Period. This opinion wrongly attempts to convert the Cincinnati Policy from a claims made policy to an occurrence policy, and it is undisputed that the Cincinnati Policy is a claims made policy that applies only to "claims" that are first made during the Policy Period.

Paragraph I makes another impermissible legal argument – in Bendure's opinion Cincinnati cannot raise a late notice defense because it did not complain that Cracker Barrel had given Cincinnati late notice of the Sucich claim when Cracker Barrel sent the July 29, 2004 letter. Bendure's opinion ignores the undisputed fact that Cracker Barrel and Cincinnati had reached an agreement regarding when Cracker Barrel would notify Cincinnati of "claims" and that Cracker Barrel breached this agreement when it gave Cincinnati notice of the EEOC Lawsuit nearly a year after it was filed and served.

## CONCLUSION

For the reasons stated in the pleadings, at oral argument and in this post-hearing brief, Cincinnati respectfully requests that this Court (i) grant Cincinnati's motion for summary judgment and deny Cracker Barrel's motion for partial summary judgment (ii) bar Donald Bendure from testifying as an expert witness; and (iii) strike the Bendure report from the record. Since Cincinnati requests that this Court find that Cincinnati has no duty to defend or indemnify Cracker Barrel, granting Cincinnati's summary judgment motion will resolve all claims in this lawsuit.

Dated: December 3, 2010     Respectfully submitted,

               Defendant,
               The Cincinnati Insurance Company

By: /s/ Nancy K. Tordai
One of its counsel

Of counsel:
H. Rowan Leathers
Miller & Martin PLC
1200 One Nashville Place
150 Fourth Avenue, North
Nashville, TN 37219
Telephone:  (615) 744-8567
Facsimile:  (615) 744-8667
Email:  rleathers@millermartin.com

Victor C. Peters
Nancy K. Tordai
Hanson Peters Nye
1000 Hart Road, Suite 300
Barrington, IL 60010
Telephone:  (847)277-9988
Facsimile:  (847)277-7339
Email:  victorpeters@hpnlaw.com
        nancytordai@hpnlaw.com

23

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Cincinnati Insurance Company's Post Summary Judgment Hearing Brief was served by electronic mail and via the Court's ECF filing on this 3rd day of December, 2010, to:

**COUNSEL FOR CRACKER BARREL:**

William Gorman Passannante
Cort Malone
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020-1000
wpassannante@andersonkill.com
cmalone@andersonkill.com


John A. Day (ECF only)
Day & Blair, PC
5300 Maryland Way, Suite 300
Brentwood, TN 37027
jday@dayblair.com


/s/ Nancy K. Tordai