IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CRACKER BARREL OLD COUNTRY STORE, INC., | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:07-cv-00303 |
| v. | ) ) ) | Judge Nixon Magistrate Judge Bryant |
| CINCINNATI INSURANCE COMPANY, | ) ) | JURY DEMAND |
| Defendant. | ) ) | |

## ORDER

Pending before the Court is Plaintiff Cracker Barrel Old Country Store, Inc.'s Motion for Partial Summary Judgment on Defense Costs (Doc. No. 94) ("Plaintiff's Motion") and Defendant Cincinnati Insurance Company's Motion for Summary Judgment (Doc. No. 130) ("Defendant's Motion"). Also pending is the parties' Joint Motion to Ascertain Status (Doc. No. 162), which is **GRANTED**.

Defendant filed a Response in opposition to Plaintiff's Motion (Doc. No. 109), to which Plaintiff filed a Reply (Doc. No. 112), and Plaintiff filed a Response to Defendant's Motion (Doc. No. 157), to which Defendant filed a Reply (Doc. No. 161). A hearing was held on the pending Motions on October 19, 2010, and both Plaintiff and Defendant filed post-hearing briefs. (Doc. Nos. 175, 176 & 179.)

For the reasons stated herein, Plaintiff's Motion is **DENIED** and Defendant's Motion is **GRANTED**.

-1-

## I. BACKGROUND

### A. *Factual History*[1]

Plaintiff is a national restaurant chain that purchased several consecutive employment practices liability ("EPL") insurance policies from Defendant (the "Cincinnati Policies" or "Policies"). Coverage under the Cincinnati Policies was in effect from June 1, 2000, through August 1, 2004. Plaintiff paid all premiums required under the Cincinnati Policies. The following provision of the Policies explained Defendant's obligation:

> [Defendant] will pay on behalf of the "insureds" all "loss" which they shall be legally obligated to pay resulting from any "claim" first made during the "policy period," or any "extended reporting period" included in or endorsed to the policy, for a "wrongful act". [Defendant] will have the right and duty to defend the "insureds" against any such "claim".

A "claim" under the Policies is defined as "a civil, administrative or arbitration proceeding commenced by the service of a complaint or charge, which is brought by any past, present or prospective 'employee(s)' of the 'insured entity' against any 'insured'" for any of the following twelve listed causes:

1. Wrongful termination of employment; or
2. Breach of any oral or written employment contract or quasi-employment contract except for that part of any express contract of employment or an express obligation to make payments in the event of the termination of employment; or
3. Employment related misrepresentation; or
4. Violation of any federal, state or local law that concerns employment discrimination including sexual harassment involving unwelcome sexual advances, requests for sexual favors or other verbal or physical acts of a sexual nature . . . ; or
5. Wrongful failure to employ or promote; or

---

[1] Unless otherwise noted, all facts in this section are undisputed for the purposes of these motions and are taken from Defendant's Response to Plaintiff's Statement of Facts in support of Plaintiff's Motion (Doc. No. 106), Plaintiff's Response to Defendant's Statement of Additional Undisputed Facts (Doc. No. 113), and Plaintiff's Response to Defendant's Statement of Undisputed Facts in support of Defendant's Motion (Doc. No. 158).

-2-

      6. Wrongful discipline; or
      7. Wrongful deprivation or [sic] a career opportunity; or
      8. Negligent evaluation; or
      9. Employment related 'personal injury'; or
      10. Wrongful failure to grant tenure; or
      11. Employment related wrongful infliction of emotional distress; or
      12. Violation of the Family Medical Leave Act;

      Including any actual or alleged assault, battery, loss of consortium,
      negligent hiring, supervision, promotion or retention in connection
      with Subparagraphs 1. through 12. above.

Between December of 1999 and March of 2001, ten employees of Plaintiff ("Charging Parties") filed Charges of Discrimination ("Charges") against Plaintiff with the Illinois Department of Human Rights ("IDHR") and the United States Equal Employment Opportunity Commission ("EEOC"), each alleging sexual or racial discrimination. On July 29, 2004, Plaintiff gave notice to Defendant that "claims had been made against certain of [Defendant's] insureds." Plaintiff attached to the notice a copy of the EEOC report on pending charges against Plaintiff and a list of litigation dated June 24, 2004. The EEOC report lists Charges of Discrimination filed by nine of the ten Charging Parties.

The EEOC brought suit against Plaintiff on August 11, 2004, for multiple alleged violations of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 ("EEOC Lawsuit"). The EEOC Lawsuit was served on Plaintiff on September 19, 2004. The EEOC's claims arose from allegations of sexual harassment, racial harassment, race discrimination, retaliation and constructive discharge made by former and current employees of Plaintiff, including the ten Charging Parties. Plaintiff gave Defendant written notice of the complaint filed in the EEOC Lawsuit on July 22, 2005.

On November 18, 2004, and July 21, 2005, Plaintiff made offers to the EEOC to settle

the EEOC Lawsuit. Plaintiff and the EEOC eventually entered into a consent decree, which designated $2,000,000 to be placed into a settlement fund. The EEOC determined the allocation of the funds. Plaintiff incurred out-of-pocket legal costs in defending itself against the EEOC Lawsuit, which Plaintiff estimates to be over $700,000.

  *B.  Procedural History*

  On March 16, 2007, Plaintiff initiated this action against Defendant and the Houston Casualty Company regarding insurance coverage for the EEOC Lawsuit. (Doc. No. 1.) Plaintiff filed an Amended Complaint on May 30, 2007. (Doc. No. 21.) The Houston Casualty Company was dismissed from this action on February 18, 2008 (Doc. No. 74), upon a joint motion with Plaintiff (Doc. No. 69). Plaintiff's claims against Defendant allege that Defendant has failed to honor its obligations under the Cincinnati Policies and seeks a declaration that Defendant has an obligation to defend against and indemnify Plaintiff for the EEOC Lawsuit. Plaintiff also seeks damages for breach of the insurance policies and for Defendant's breach of its duty of good faith and fair dealing. (Doc. No. 21.)

  On March 24, 2009, Plaintiff filed a Motion for Partial Summary Judgment (Doc. No. 94) with a supporting Memorandum (Doc. No. 95), the affidavit of Michael Zylstra, Plaintiff's general counsel (Doc. No. 96), and supporting exhibits (Doc. Nos. 96-1 to 96-14). Defendant filed a Response in Opposition to Plaintiff's Motion on June 16, 2009 (Doc. No. 109), and Plaintiff filed a Reply on June 30, 2009 (Doc. No. 112).

  On November 15, 2009, Defendant filed its Motion for Summary Judgment (Doc. No. 130) with a supporting Memorandum (Doc. No. 133), a Statement of Undisputed Facts (Doc. No. 131), and a number of supporting exhibits (Doc. Nos. 132-1 to 132-31). Plaintiff filed a

Response in Opposition to Defendant's Motion on March 25, 2010 (Doc. No. 158), and Defendant filed a Reply on April 8, 2010 (Doc. No. 161).

A hearing was held on the pending Motions on October 19, 2010. (Doc. No. 172.) Both parties submitted post-hearing briefs on December 3, 2010. (Doc. Nos. 175 & 176.) Defendant filed a second post-hearing brief on December 8, 2010. (Doc. No. 179.)

## II.  STANDARD OF REVIEW

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). The non-moving party must show more than "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586-87 (1986)). Furthermore, a dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Id.* at 254. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable factfinder would not find for the non-moving party, summary judgment must be granted. *See Matsushita*, 475 U.S. at 249-50.

## III.  ANALYSIS

Plaintiff's Motion requests that the Court grant it partial summary judgment, finding that Defendant breached its contractual duty to defend Plaintiff against the EEOC Lawsuit and that Defendant must reimburse Plaintiff for the defense costs that Plaintiff expended. (Doc. No. 94.) Plaintiff argues that, under the Cincinnati Policies and Tennessee law, it is entitled to full reimbursement of its defense costs. (Doc. No. 95 at 8.) Defendant's Motion counters that Plaintiff cannot show that the Policies even arguably cover the EEOC Lawsuit, and Defendant is therefore entitled to summary judgment on both its duty to defend against the EEOC Lawsuit and its duty to indemnify Plaintiff for the resulting settlement. (Doc. No. 133 at 1.)

### A.  *Relevant Law*

An insurer's duty to defend is a matter of law and may be resolved by summary judgment when there are no genuine disputes as to material facts. *Travelers Indem. Co. of Am. v. Moore & Assoc., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007). A duty to defend is separate from an obligation

-6-

Case 3:07-cv-00303   Document 193   Filed 09/21/11   Page 6 of 14 PageID #: 7901

to pay claims under a policy. *Planet Rock, Inc. v. Regis Ins. Co.*, 6 S.W.3d 484, 491 (Tenn. Ct. App. 1999) (citing *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996)). The duty to defend is broader than the duty to indemnify, as the duty to defend is based merely on the facts alleged. *Travelers Indem. Co. of Am.*, 216 S.W.3d at 302. Determining the existence of a duty to defend is confined to the four corners of the underlying complaint. *Smith & Nephew Inc. v. Fed. Ins. Co.*, 113 F. App'x 99, 102 (6th Cir. 2004). A court must review the allegations within the complaint and determine if they sufficiently state a claim under the insurance policy. *Travelers Indem. Co.*, 216 S.W.3d at 305; *Drexel Chem. Co.*, 933 S.W.2d at 480. The Tennessee Court of Appeals has further explained:

> If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy . . . An insurer may not properly refuse to defend an action against its insured unless "it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage."

*Drexel Chem. Co.*, 933 S.W.2d at 480 (quoting *Glens Falls Ins. Co. v. Happy Day Laundry, Inc.*, 1989 WL 91082, at *5 (Tenn. Ct. App. Aug. 14, 1989)). "Where the allegations of the complaint are ambiguous, any doubts regarding their sufficiency to trigger a defense obligation are resolved in favor of the insured." *Smith & Nephew Inc.*, 113 F. App'x at 102 (citing *Dempster Bros., Inc. v. United States Fid. & Guar. Co.*, 388 S.W.2d 153, 154-56 (Tenn. Ct. App. 1964)).

With regard to an insurer's duty to indemnify, a policyholder bears the burden of proving that its claim comes within the terms of the policy. *Blain Constr. Corp. v. Ins. Co. of N. Am.*, 171 F.3d 343, 349 (6th Cir. 1999). The scope of coverage of an insurance policy is a question of law. *Nat'l Ins. Ass'n v. Simpson*, 155 S.W.3d 134, 138 (Tenn. Ct. App. 2004). In interpreting the terms of the insurance policy, courts use standard principles of contractual construction. *Id.*

at 137. The goal of contractual interpretation is to ascertain and enforce the intent of the parties, which should be derived from the provisions of the insurance policy. *Id.* The provisions should be given their natural and ordinary meaning, and when the terms are clear, courts should avoid construing the policy in a way that would extend or restrict the intended scope of coverage. *Id.* at 138. A policy is ambiguous when its provisions may reasonably be read to have more than one meaning, but a court may not apply a strained construction to find ambiguity where none exists. *Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare*, 368 F.3d 894, 897 (6th Cir. 2004). If there is ambiguity as to clauses excluding coverage, they should be construed against the insurer, in light of their apparent purpose when the purpose can be ascertained. *Nat'l Ins. Ass'n*, 155 S.W.3d at 138. A contract is not rendered ambiguous, however, because the parties disagree as to the interpretation of one or more of its provisions. *Baptist Physician Hosp. Org.*, 368 F.3d at 897-98.

  B. *The Parties' Motions*

  Defendant does not appear to dispute that the type of allegations asserted in the EEOC complaint fall within the scope of the Policies, under the provision for claims arising out of "[v]iolation of any federal, state or local law that concerns employment discrimination including sexual harassment involving unwelcome sexual advances, requests for sexual favors or other verbal or physical acts of a sexual nature." The parties do contest, among many things, the proper construction of the Policies' definition of "claim," which covers "a civil, administrative or arbitration proceeding commenced by the service of a complaint or charge, which is brought by any past, present or prospective 'employee(s).'"

  Defendant asserts that the underlying lawsuit was brought solely by the EEOC, which is

not an employee of Plaintiff, and therefore the EEOC Lawsuit is not even arguably covered under the definition. (Doc. No. 109 at 18.) Plaintiff avers, however, that the correct understanding of the definition is that the underlying complaint or charge must be brought by an employee, not the proceeding; in other words, the proceeding must merely be commenced by a complaint or charge brought by an employee. (Doc. No. 112 at 4.) In its Response to Defendant's Motion, Plaintiff elaborates that the use of a comma followed by the word "which" means that the qualifying phrase modifies only the subject that immediately precedes the comma – in this case, only to "complaint or charge." (Doc. No. 157 at 10 n.6.) Plaintiff asserts that if Defendant intended to require that the "proceeding" be brought by an employee, the entire phrase "commenced by the service of a complaint or charge" should have been offset with commas. (*Id.*)

Neither party cites law in support of their positions on the interpretation of the relevant definition. However, the Court believes that the grammar principle Plaintiff articulates is the "last antecedent rule," under which a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows. *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); *United States v. Martin*, 438 F.3d 621, 631 (6th Cir. 2006) (applying Tennessee law); *In re Estate of Tanner*, 295 S.W.3d 610, 624 (Tenn. 2009). The rule, however, "'is not an absolute'" and "'can be overcome by other indicia of meaning.'" *In re Estate of Tanner*, 295 S.W.3d at 624-25 (quoting *United States v. Hayes*, 129 S. Ct. 1079, 1086 (2009)). The Tennessee Supreme Court has declined to mechanically apply the last antecedent rule and reaffirmed its position not to apply rules of construction when the interpretation "'would yield an absurd result.'" *Id.* at 625 n.14 (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)).

Case 3:07-cv-00303   Document 193   Filed 09/21/11   Page 9 of 14 PageID #: 7904

Further, the Sixth Circuit declined to apply the rule when the governing state law required interpretation of contracts under the plain meaning rule, as Tennessee law does, and the contract in question was not ambiguous. *In re Arbors of Houston Assocs. Ltd. P'ship*, No. 97-2099, 1999 WL 17649, at *3 (6th Cir. Jan. 4, 1999).

In *Payless Shoesource, Inc. v. Travelers Companies, Inc.*, 585 F.3d 1366 (10th Cir. 2009), the Tenth Circuit addressed the last antecedent rule as it applied to a provision of an EPL policy. Like in the case at bar, the plaintiff in *Payless Shoesource* brought suit against the insurance company that provided the policy for indemnification of an employment-related lawsuit. The parties disputed the meaning of an exclusionary provision, and the court's resolution of the dispute would determine whether the underlying lawsuit was covered by the EPL policy. The provision contained a list of excluded federal statutes, followed by a comma and the phrase "other similar provisions of any federal, state, or local statutory or common law." *Id.* at 1368-69. The plaintiff relied on the last antecedent rule to contend that the modifying phrase applied only to the last statute in the list, or that such an interpretation was "at least sufficiently plausible to create an ambiguity about the contract's meaning." *Id.* at 1371. The court rejected the plaintiff's argument for various reasons and explained that "while the rules of English grammar often afford a valuable starting point to understanding a speaker's meaning, they are violated so often by so many of us that they can hardly be safely relied up as the end point of any analysis of the parties' plain meaning." *Id.* at 1372. The court refused to enforce "the more grammatical interpretation" of the contract "when evident sense and meaning require a different construction." *Id.* at 1371 (internal quotation omitted).

The definition of a "claim" in the Cincinnati Policies is not ambiguous, and therefore the

-10-

Court need not adhere to the last antecedent rule. A court may not apply a strained construction to policy provisions to find ambiguity where none exists, and a contract is not rendered ambiguous merely because the parties disagree as to the interpretation of one or more of its provisions. *Baptist Physician Hosp. Org.*, 368 F.3d at 897-98. The logical reading of the definition is that the first clause, "a civil, administrative or arbitration proceeding commenced by the service of a complaint or charge," is the subject of the sentence, the entirety of which is modified by the second clause. The Court finds that here, the definition of a "claim" has a clear meaning that a covered proceeding must be brought by an employee, and the Court must therefore give that meaning effect, *Nat'l Ins. Ass'n*, 155 S.W.3d at 138.

More importantly, even if the modifying clause applied only to "complaint or charge," the EEOC Lawsuit would still not qualify as a claim under the Policies. It would be illogical for both the terms "complaint" and "charge" to apply to all three types of proceedings listed in the definition; it is well understood that service of a complaint, not a charge, commences a civil action. "Complaint" alone, therefore, must apply to civil proceedings, while "charge" applies to administrative proceedings. Plaintiff argues that the definition requires only that the proceeding "evolve from" or be commenced "as the result of" a complaint or charge brought by an employee. (Doc. No. 112 at 4; Doc. No. 157 at 10.) However, the words "evolve from" or "as the result of" are not found in the definition. The EEOC Lawsuit was not "commenced by the service of" a charge, according to the plain meaning of that language, even though it may have arisen because previous administrative charges brought potentially illegal activity to the EEOC's attention. Thus, that the EEOC Charges on which the EEOC partially based its decision to bring a lawsuit were brought by Plaintiff's employees is irrelevant. The complaint that commenced

-11-

the EEOC Lawsuit was not brought by an employee, and, therefore, even under Plaintiff's interpretation of the definition, the lawsuit is not a "claim" under the Policies. The Court finds, therefore, that as a matter of law Defendant does not have a duty to indemnify Plaintiff for the settlement relating to the EEOC Lawsuit.

Although Defendant does not have a duty to indemnify, it may still have had a duty to defend Plaintiff against the EEOC Lawsuit, as the duty to defend is broader than a duty to indemnify under Tennessee law. However, the law in favor of finding a duty to defend is based on the factual allegations of the complaint in the underlying lawsuit. *Smith & Nephew Inc.*, 113 F. App'x at 102; *Travelers Indem. Co. of Am.*, 216 S.W.3d at 305. In this case, the issue is not one of the substance of the underlying allegations, but rather whether the form of the EEOC Lawsuit falls within the Policies' definition of a "claim." The Court finds that it unambiguously does not. Plaintiff asserts that such a finding "flies in the face of common sense," as it bought EPL insurance to protect itself from exactly the type of liability that results from EEOC actions, which is the "very purpose" of the coverage. (Doc. No. 112 at 4 n.5.) However, the Court is confined to the plain language of the contract bargained for by two entities with presumably equal bargaining power.

Although litigation involving EPL insurance policies has not focused on disputes about the policies' definitions of a "claim," the Court finds the definitions quoted in other EPL insurance decisions instructive. In short, the Court has found no instances where the relevant definition restricted claims to those "brought by an employee," indicating that this is not necessarily a default qualification. The definitions that the Court has noted are broad and do not limit who must bring an otherwise covered claim against the insured party; one such definition

-12-

even explicitly includes proceedings brought by the EEOC. *See, e.g.*, *Beauvallon Condominium Ass'n, Inc. v. Granite State Ins. Co.*, No. 11-cv-00215-RPM, 2011 WL 2565474, at *5 (D. Colo. June 29, 2011) ("'Claim' shall mean: (1) any proceeding initiated against an Insured, including any appeals therefrom. . ."); *Sherwood Brands, Inc. v. Great Am. Ins. Co.*, 13 A.3d 1268, 1271 (Md. 2011) ("'Claim' shall mean . . . (2) a civil, criminal, administrative or arbitration proceeding made against any Insured seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment, or the receipt or filing of notice of charges or similar document."); *MedPointe Healthcare, Inc. v. Axis Reinsurance Co.*, No. 08-1494, 2009 WL 901959, at *1 (D.N.J. Mar. 31, 2009) ("claim" defined in part as "(ii) a civil proceeding against any Insured commenced by the service of a complaint or similar pleading, (iii) a formal, administrative, investigative or regulatory proceeding by or before the Equal Employment Opportunity Commission (EEOC) . . . against any Insured commenced by a notice of charges, formal investigative order or similar document."). The Court's construction of the Policies' definition of a "claim" is therefore consistent with the plain meaning of those equivalent definitions in other EPL insurance policies. The Court cannot find ambiguity where none exists merely because Plaintiff did not bargain for the coverage that it expected.

     For the reasons discussed, the Court finds that the EEOC Lawsuit does not give rise to Defendant's duty to defend against it or indemnify Plaintiff for the resulting settlement. Accordingly, the Court **GRANTS** summary judgment in favor of Defendant.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **DENIED**, Defendant's Motion is **GRANTED**, and this case is **DISMISSED**.

It is so ORDERED.

Entered this ___16th_____ day of September, 2011.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT