# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: September 10, 2012

Mr. John A. Day
Day & Blair
5300 Maryland Way
Suite 300
Brentwood, TN 37027-0000

Ms. Rene F. Hertzog
Anderson, Kill & Olick
1251 Avenue of the Americas
New York, NY 10020

Mr. Cort T. Malone
Anderson, Kill & Olick
1251 Avenue of the Americas
New York, NY 10020

Mr. William G. Passannante
Anderson, Kill & Olick
1251 Avenue of the Americas
New York, NY 10020

Mr. Victor C. Peters
Peters & Nye
14 Executive Court
Suite 2
South Barrington, IL 60010

Mr. Eric T. Presnell
Law Offices
150 Fourth Avenue, N.
Suite 1200

Nashville, TN 37219

Ms. Nancy K. Tordai
Peters & Nye
14 Executive Court
Suite 2
South Barrington, IL 60010

Re: Case No. 11-6306, *Cracker Barrel Old Country Sto v. Cincinnati Insurance Company*
Originating Case No. : 3:07-CV-303

Dear Sir or Madam,

   The Court issued the enclosed (Order/Opinion) today in this case.

                              Sincerely yours,

                              s/Cheryl Borkowski
                              Case Manager
                              Direct Dial No. 513-564-7035

cc:  Mr. Keith Throckmorton

Enclosure

Mandate to issue

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 12a1001n.06**

**No. 11-6306**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

> **FILED**
> *Sep 10, 2012*
> DEBORAH S. HUNT, Clerk

| | |
|---|---|
| CRACKER BARREL OLD COUNTRY STORE, INC., | ) ) ) |
|      Plaintiff-Appellant, | ) ) |
| v. | ) ) |
| CINCINNATI INSURANCE COMPANY, | ) ) |
|      Defendant-Appellee. | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

O P I N I O N

**BEFORE:  BOGGS and McKEAGUE, Circuit Judges, and WATSON, District Judge.**[*]

**McKeague, Circuit Judge.**  In this insurance contract dispute, Appellant Cracker Barrel Old Country Store, Inc. ("Cracker Barrel") seeks coverage from its insurer, the Cincinnati Insurance Company ("Cincinnati"), for the costs relating to a class action lawsuit filed against it by the EEOC. The district court granted summary judgment to Cincinnati.  For the reasons set forth below, we AFFIRM the judgment of the district court.

## I.  BACKGROUND

Cracker Barrel is a nationwide restaurant chain operating in 41 states.  It purchased Employment Practices Liability Insurance from Cincinnati for four consecutive policy periods, which

---

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

provided coverage from June 1, 2000, to August 1, 2004.  The policies covering the first three periods, from June 1, 2000, to August 1, 2003, included a $250,000 deductible per claim and a $25 million aggregate limit.  The last policy, covering August 1, 2003, to August 1, 2004, included a $500,000 deductible per claim and $15 million aggregate limit.  Apart from the differences in deductibles and limits, the policies were identical.[1]

On August 11, 2004, the EEOC filed a class action suit against Cracker Barrel alleging sex and race discrimination at three Cracker Barrel restaurants in Illinois.  The suit was served on Cracker Barrel on September 19, 2004.  It was based on ten underlying charges filed with the EEOC by Cracker Barrel employees between January 2000 and March 2001.  Cracker Barrel and the EEOC eventually settled for $2 million on March 8, 2006.  Cracker Barrel estimates its out-of-pocket legal defense costs to be around $700,000.

On March 16, 2007, Cracker Barrel filed suit against Cincinnati and the Houston Casualty Company[2] demanding insurance coverage for the EEOC suit.  The Houston Casualty Company was voluntarily dismissed.  Cracker Barrel filed a motion for partial summary judgment, and Cincinnati filed a cross motion for summary judgment.  The district court granted summary judgment to Cincinnati, finding that the EEOC suit was not a "claim" as defined by the Policy.  Cracker Barrel appeals, claiming that (1) the definition of "claim" covers suits brought by the EEOC or is at least ambiguous and should be construed against the insurer, (2) Cincinnati breached its duty to defend

---

[1]We will simply refer to the Cincinnati policies as "the Policy" throughout this opinion.

[2]Cracker Barrel purchased an employment liability policy from the Houston Casualty Company for coverage after the last Cincinnati policy period ended.

- 2 -

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

Cracker Barrel in the EEOC litigation, and (3) the district court erred in dismissing its claim of bad-faith refusal to pay against Cincinnati.

## II.  ANALYSIS

### A.  Standards of Review

This court reviews a district court's grant of summary judgment de novo.  *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc.*, 598 F.3d 257, 264 (6th Cir. 2010).  Summary judgment is appropriate when the materials in the record "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A motion to dismiss is also reviewed de novo.  *Fed.-Mogul U.S. Asbestos Pers. Injury Trust v. Cont'l Cas. Co.*, 666 F.3d 384, 387 (6th Cir. 2011).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B.  EEOC Suit

#### 1.  Applicable Law

"As a federal court sitting in diversity, we apply the choice-of-law provisions of the forum state."  *Pedicini v. Life Ins. Co. of Ala.*, 682 F.3d 522, 526 (6th Cir. 2012) (internal quotation marks omitted).  Where, as here, there is no choice-of-law provision in the insurance policy under dispute, Tennessee applies "the law of the state where the insurance policy was 'made and delivered.'"  *Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co.*, 225 S.W.3d 482, 485 n.1 (Tenn. Ct. App.

- 3 -

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

2006) (quoting *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973)).[3]

The parties do not dispute that Tennessee law governs.

Under Tennessee law, "[t]he question of the extent of insurance coverage is a question of law

involving the interpretation of contractual language[.]" *Clark v. Sputniks, LLC*, 368 S.W.3d 431,

441 (Tenn. 2012). "Insurance contracts are 'subject to the same rules of construction as contracts

generally,' and in the absence of fraud or mistake, the contractual terms 'should be given their plain

and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect

to the intent of the parties.'" *Id.* (quoting *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277

S.W.3d 381, 386-87 (Tenn. 2009)). "In addition, insurance policies should be construed as a whole

in a reasonable and logical manner." *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216

S.W.3d 302, 306 (Tenn. 2007) (alteration and internal quotation marks omitted).

"If the language is clear and unambiguous, the literal meaning controls the outcome of the

dispute." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). "If, however, the words

in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be

determined by a literal interpretation of the language," *id.*, and any uncertainties or ambiguities in

an insurance policy "must be construed strongly against the insurer and in favor of the insured."

*Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 366 (Tenn. 1973). "A strained

---

[3]The district court found Tennessee law controlling because (1) Cracker Barrel is incorporated in Tennessee, making it likely the contract was issued and delivered there, (2) the Policy contains modifications specific to Tennessee, and (3) both parties cite Tennessee authority as controlling. *See Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 590 F. Supp. 2d 970, 972 n.3 (M.D. Tenn. 2008), *overruled on other grounds by Heil Co. v. Evanston Ins. Co.*, --- F. 3d ---, No. 11-6252, 2012 WL 3139935, at *6-7 (6th Cir. Aug. 3, 2012).

- 4 -

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

construction may not be placed on the language used to find ambiguity where none exists," *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975), and "[a] contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions." *Int'l Flight Ctr. v. City of Murfreesboro*, 45 S.W.3d 565, 570 n.5 (Tenn. Ct. App. 2000).

In sum, the Court looks first to whether the disputed contract provision is ambiguous under the plain meaning rule. The plain meaning controls unless, inter alia, a contrary intent appears in the contract or the interpretation would lead to an absurd or unreasonable result. 21 Tenn. Prac. Contract Law and Practice § 8:13. Where the provision is susceptible to more than one reasonable interpretation, the policy will be construed in favor of the insured. *Gredig v. Tenn. Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994).

### 2. Interpretation of "Claim"

The dispute centers on the definition of the word "claim" under the Policy. The Policy provides,

> We will pay on behalf of the "insureds" all "loss" which they shall be legally obligated to pay resulting from any "claim" first made during the "policy period," or any "extended reporting period" included in or endorsed to the policy, for a "wrongful act." We will have the right and duty to defend the "insureds" against any such "claim."

A "claim" is defined by the Policy as

> a civil, administrative or arbitration proceeding commenced by the service of a complaint or charge, which is brought by any past, present or prospective "employee(s)" of the "insured entity" against any "insured" for . . . [v]iolation of any federal, state or local law that concerns employment discrimination including sexual harassment . . . .

- 5 -

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

Cincinnati argues that the EEOC lawsuit is not a "claim" under the plain meaning of the definition because it was not brought by an employee but by the EEOC. Cracker Barrel argues that the EEOC lawsuit is a "claim" under the plain meaning of the definition because the definition indicates only that a proceeding must be "commenced" by a "charge" brought by an "employee," which is what happened. Both parties argue that the other's interpretation reads out part of the definition of "claim" and is inconsistent with the Policy as a whole.

The district court found that the definition unambiguously excluded actions brought by the EEOC. The district court reasoned that only a "complaint" can commence a civil action while a "charge" begins an administrative proceeding. Thus, because the act that commenced the EEOC suit was a complaint and that complaint was brought by the EEOC, not an employee, the EEOC suit was not a "claim." It stated, "The EEOC lawsuit was not 'commenced by the service of' a charge, according to the plain meaning of that language, even though it may have arisen because previous administrative charges brought potentially illegal activity to the EEOC's attention." *Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, No. 3:07-CV-00303, 2011 WL 5208369, at *7 (M.D. Tenn. Sept. 21, 2011).

We believe the district court erred in this finding. The definition of "claim" can be reasonably read both ways and should thus be construed in favor of the insured, Cracker Barrel. Under Title VII's statutory scheme, which requires administrative exhaustion as a precondition to suit, *see Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006), exactly when a proceeding has "commenced" is ambiguous. A proceeding may have "commenced" when an employee first filed a charge with the EEOC, which then leads to a civil complaint filed by the

- 6 -

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

EEOC, or a proceeding may have "commenced" when the EEOC filed suit.  *See* 42 U.S.C. § 2000e-5(e)-(f).  Under this scheme, a civil proceeding can in fact be "commenced" by a charge rather than a complaint, depending on one's interpretation of the word "commence."  In fact, the inclusion of the phrase "commenced by the service of a complaint or charge" could be read to provide for situations where administrative remedies must be exhausted before filing civil suit.  As Cracker Barrel argues, the district court's (and Cincinnati's) reading would be sufficiently conveyed by defining "claim" as "a civil, administrative or arbitration proceeding brought by any past, present, or prospective employee(s)."  The district court's  interpretation would be correct, Cracker Barrel argues, if the word "commenced" were preceded by a comma, setting off the entire phrase "commenced by a service of a complaint or charge,"  or if  "commenced by a service of a complaint or charge" were entirely struck.  The inclusion of the phrase could therefore reasonably be read to mean that a civil proceeding is "commenced" when an employee files a charge with the EEOC.

Cracker Barrel's interpretation also makes sense in light of the Policy as a whole.  First, Part II, Section III.A. of the Policy, which discusses the limits of coverage, provides, "[t]he Limits of Insurance shown in Part II Declarations and the rules below fix the most we will pay regardless of the number of . . . Persons or organizations making 'claims' or bringing suits."  While Cincinnati responds that this argument is unpersuasive because this section discusses limitations and has nothing to do with coverage, we find it relevant in that it shows that the Policy contemplated claims made by organizations.  As the Tennessee Supreme Court has instructed, "[I]nsurance policies should be construed as a whole in a reasonable and logical manner."  *Moore & Assocs., Inc.*, 216 S.W.3d at 306 (internal quotation marks omitted); *see also White v. State Farm Mut. Auto. Ins. Co.*,

- 7 -

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

443 S.W.2d 661, 666 (Tenn. Ct. App. 1969) ("[T]he insuring clause and exceptions thereto should

not be considered separately, but as parts of a whole, with any ambiguities to be construed against

the insurer . . . .").[4]

Second, the Policy contemplates that multiple "claims" arising from the same "wrongful act"

will be considered a single "claim." Part IV, Section II.E. provides that "[r]egardless of the number

of policies or Coverage Parts involved, all 'claims' based upon or arising out of the same 'wrongful

act' or any 'interrelated wrongful acts' shall be considered a single 'claim.'" A charge filed with the

EEOC by an employee that turns into a civil suit filed by the EEOC based on the same "wrongful

act" may thus be one "claim" deemed made "[w]hen notice of the earliest 'claim' arising out of such

'wrongful act' or 'interrelated wrongful acts' is received in writing by a 'policy insured' or by

[Cincinnati], whichever comes first[.]"

The parties' arguments impugning the other's interpretation only underscore our conclusion

that the provision is ambiguous. The parties both argue that the other's interpretation reads out or

rewrites part of the definition of "claim." As discussed above, Cracker Barrel argues that

Cincinnati's interpretation reads out the phrase "commenced by the service of a complaint or

charge," rewriting the definition as "a civil, administrative or arbitration proceeding brought by any

past, present, or prospective employee(s)." Cincinnati argues that Cracker Barrel's interpretation

rewrites the definition as "a proceeding commenced *as the result of* a complaint or charge, brought

---

[4]This, of course, does not conclusively demonstrate that Cracker Barrel's interpretation is correct. It simply demonstrates that Cracker Barrel's interpretation is a reasonable one.

- 8 -

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

by any past, present, or prospective employee(s) of the insured entity." We think both sides advance

reasonable arguments, which highlights the ambiguity of the definition as written.

The parties also quibble over the application of the "last antecedent" rule. According to this

canon of construction, "'a limiting clause or phrase . . . should ordinarily be read as modifying only

the noun or phrase that it immediately follows.'" *In re Estate of Tanner*, 295 S.W.3d 610, 624

(Tenn. 2009) (quoting *United States v. Hayes*, 555 U.S. 415, 425 (2009)) (omission in original).

Cracker Barrel argues that the phrase "which is brought by any past, present or prospective

employee(s)" modifies only "complaint or charge," which indicates that only the "complaint or

charge" must be brought by an employee, not the "civil, administrative, or arbitration proceeding."

 Cincinnati points out that the last antecedent rule does not apply when the modifying clause is set

off by a comma. Cincinnati is correct on this point. "The presence of a comma separating a

modifying clause in a statute from the clause immediately preceding it is an indication that the

modifying clause was intended to modify all the preceding clauses and not only the last antecedent

one, thus making the last-antecedent rule inapplicable." 82 C.J.S. Statutes § 443. Thus, the clause

"which is brought by any past, present or prospective employee(s)" modifies the entire preceding

clause, "a civil, administrative or arbitration proceeding commenced by the service of a complaint

or charge."

This, however, is not necessarily conclusive. As discussed above, under Title VII's statutory

scheme, a civil proceeding could be considered "commenced" by a charge filed by an employee.

Further, the Tennessee Supreme Court has cautioned against applying canons of construction too

"mechanically and without attention to context." *In re Estate of Tanner*, 295 S.W.3d at 624 n.13

- 9 -

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

("[C]anons of construction, though helpful, should always be tested against the other interpretive tools at a court's disposal."); *see also Hayes*, 555 U.S. at 425 ("The rule of the last antecedent . . . is not an absolute and can assuredly be overcome by other indicia of meaning." (internal quotation marks omitted)). The district court, in rejecting Cracker Barrel's last-antecedent-rule argument, relied on a Tenth Circuit case that made a similar observation: "[W]hile the rules of English grammar often afford a valuable starting point to understanding a speaker's meaning, they are violated so often by so many of us that they can hardly be safely relied upon as the end point of any analysis of the parties' plain meaning." *Payless Shoesource, Inc. v. Travelers Cos., Inc.*, 585 F.3d 1366, 1372 (10th Cir. 2009).

Cracker Barrel also points out that its deductible for each "claim" was $250,000 for the first three policy periods and $500,000 for the last policy period. Cracker Barrel argues that these deductibles would not make sense if EEOC suits were excluded because compensatory and punitive damages for each Title VII complaining party are capped at $300,000 in cases where the employer employs 500 or more people. *See* 42 U.S.C. § 1981a(a)(1), (b)(3). Cincinnati counters that this cap does not apply to front pay, back pay, or state law claims. Relying on a Ninth Circuit decision, *Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174 (9th Cir. 2002), Cincinnati asserts that "claims" are not limited to Title VII actions but also include a number of other wrongful employment actions such as breach of employment contract, employment related infliction of emotional distress, and employment related personal injury. Cincinnati also argues that this deductible makes sense in light of the threat of class action suits as well as the cost of attorney fees and expenses paid in defense of a claim. These details are also ultimately inconclusive. Cracker Barrel's argument would make

- 10 -

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

sense if the Policy covered only single-employee Title VII claims. On the other hand, just because the deductibles are reasonable even if EEOC suits are excluded does not mean that they are in fact excluded.

Lastly, Cracker Barrel argues that Cincinnati's interpretation yields the absurd result that, for claims arising under statutory schemes requiring plaintiffs to exhaust administrative remedies as a precondition to suit (such as Title VII), insurance coverage could evaporate as the claim progresses, if the EEOC brings suit on the claim. This argument also fails to carry the day. Cracker Barrel may simply have contracted for less than full coverage.

In sum, we find that the district court erred in granting summary judgment to Cincinnati on the ground that the definition of "claim" unambiguously excludes civil suits filed by the EEOC. We find that the definition is susceptible to more than one reasonable interpretation and accordingly construe it in favor of Cracker Barrel. The parties' arguments, each in favor of its interpretation, are not conclusive either way and serve only to highlight the definition's ambiguity.

### 3. Alternative Grounds for Affirmance

Cincinnati correctly notes that we may "affirm on any grounds supported by the record even if different from the reasons of the district court," *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007) (internal quotation marks omitted), and argues that, even considering the EEOC suit as a "claim," it was not first made within the "policy period" as required for coverage. We agree and affirm the district court's judgment on this ground.

- 11 -

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

The Cincinnati Policies provided coverage for four consecutive years, from June 1, 2000, to August 1, 2004.[5]  The parties agree that the Policy is a "claims made" policy, meaning that coverage is limited to "wrongful acts" for which "claims" are first made against an "insured" during the "policy period."   A "wrongful act" is defined as an act "committed, attempted, or allegedly committed or attempted on or after the Retroactive Date . . . and prior to the end of the 'policy period . . . .'"

The EEOC suit was brought on behalf of a class of employees, of which ten plaintiffs were named.  These ten named plaintiffs had previously filed charges with the EEOC.  The first was filed by Joan Hubbard on January 11, 2000.  She had been employed at a Cracker Barrel in Mattoon, Illinois, and alleged class-wide gender discrimination.[6]  The next eight charges were made between February and April of 2000 and were all brought by former and current employees of a Cracker Barrel in Bloomington, Illinois.   Of these eight charges, seven alleged class-wide gender discrimination and one alleged class-wide race discrimination.  The tenth charge was filed by Valerie Sucich on March 16, 2001.  She had been employed at a Cracker Barrel in Matteson, Illinois.  She alleged gender discrimination but did not bring her charge as part of a class.

The EEOC filed suit on August 11, 2004, and served Cracker Barrel on September 19, 2004.  The EEOC ultimately identified 41 additional employees from the Mattoon, Bloomington, and

---

[5]The first policy period began on August 1, 2000, with a retroactive date of June 1, 2000.

[6]It appears that Cracker Barrel received notice of all charges soon after they were filed with the EEOC, except for Hubbard's charge.  Cracker Barrel's general counsel, however, stated he was familiar with Hubbard's documents, and the parties do not dispute whether Hubbard's charge was properly served on Cracker Barrel.

- 12 -

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

Matteson restaurants who claimed to have been discriminated against on the basis of sex or race as well.[7]  The parties agree that, of the named plaintiffs, Sucich alone filed a charge during a policy period covered by Cincinnati.

Cincinnati contends that under Cracker Barrel's interpretation of "claim," where a civil suit filed by the EEOC is a progression of prior administrative charges, the EEOC "claim" was first made when the first charge alleging class-wide discrimination was received by Cracker Barrel.  It cites *LA Weight Loss Ctrs., Inc. v. Lexington Ins. Co.,* No. 1560, 2006 WL 689109 (Pa. Ct. C.P. 2006) in support. In  *LA Weight Loss*, an employee filed a charge with the EEOC alleging class-wide gender discrimination prior to the beginning of an insurance policy period, which led to a class action suit filed by the EEOC during the policy period.  The court held that the EEOC suit was not a claim first made during the policy period.  It first determined that the employee charge constituted a "claim" under the insurance policy.  The court then reasoned,

> [T]he underlying class action lawsuit was not the first written notice received by LA Weight Loss of class-wide gender discrimination claims.  The class wide [sic] gender discrimination class action grew as a consequence of the ongoing EEOC administrative proceedings.  Consequently, since the underlying class action lawsuit was a progression of the prior EEOC administrative charges filed prior to the Lexington policy period, Lexington does not have a duty to provide coverage, as the claim was first made before the Lexington policy period became effective.

*LA Weight Loss,* 2006 WL 689109, at *5.

We find Cincinnati's interpretation of when the EEOC "claim" was first made correct and the reasoning of *LA Weight Loss* persuasive.  The record demonstrates that Cracker Barrel first

---

[7]The record indicates that these 41 additional claimants were identified through a questionnaire that the EEOC sent to employees of the Mattoon, Bloomington, and Matteson Cracker Barrel restaurants in February of 2005, well after the complaint was filed and served.

- 13 -

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

received notice of class action allegations of discrimination no later than February 2000, by which time six of the above-mentioned charges had been filed with the EEOC, five of which the record shows were subsequently served on Cracker Barrel. The resulting EEOC class action "claim" was thus first made prior to the start of the first policy period on June 1, 2000. This is, in fact, the natural result of construing the definition of "claim" in favor of Cracker Barrel. Under Cracker Barrel's interpretation, a "claim" is a proceeding commenced by the service of a complaint or charge by an employee. Thus, the EEOC suit "commenced" when the first charge of class-wide discrimination that subsequently led to the EEOC suit was filed by an employee.

Cracker Barrel argues that the entire EEOC suit relates to when the Sucich charge was filed. Cracker Barrel's argument proceeds as follows: The Sucich charge is the earliest-filed charge of the EEOC suit, rather than any of the nine earlier-filed charges, because the Policy's definition of "wrongful act"—an act committed, attempted, or allegedly committed or attempted during the policy period—renders wrongful acts occurring outside the policy period a nullity. (And presumably, any charges made based upon these nullified wrongful acts are also reduced to nullities.) The EEOC "claim" is then deemed first made when Sucich's charge was filed, by operation of the Policy's "interrelated wrongful acts" provision. This provision states, in relevant part, that all claims based upon interrelated wrongful acts shall be considered a single claim deemed first made when notice of the earliest claim arising out of the interrelated wrongful acts is received in writing by Cracker Barrel or by Cincinnati, whichever comes first.

We find this interpretation unpersuasive. According to Cracker Barrel, whenever many claims are based upon interrelated wrongful acts (and thus are considered a single claim), such

- 14 -

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

"claim" will always be covered because any claim based on a wrongful act, interrelated or not, falling outside the policy period is a nullity, and the only claims that count for purposes of determining when a claim is made are those made within the policy period. Under Cracker Barrel's rules, the insured always wins.

The interrelated wrongful acts provision, however, is really beside the point. The point is this: under Cracker Barrel's proffered interpretation of "claim"—that the EEOC lawsuit is a "claim" under the Policy because it is a civil proceeding "commenced by the service of a complaint or charge, which is brought by any . . . employee"—the only logical answer to the question of when the EEOC suit "commenced" (and thus when the "claim" was "made") is when the first charge which led to the eventual EEOC class action was filed. A proceeding can only commence once, and Cracker Barrel's attempt to bifurcate the EEOC suit into pre-Sucich and post-Sucich parts is at odds with its interpretation of "claim." Under the premise that the EEOC lawsuit is a single "claim" (regardless of whether it is connected to its component claims through the "interrelated wrongful acts" provision), such "claim" was made (i.e., the proceeding "commenced") prior to the inception of the first policy period. This is sufficient to defeat Cracker Barrel's demand for coverage.[8]

---

[8]We note that Cincinnati may well be liable for Sucich's claim, as her EEOC filing would constitute a claim under the Policy. Of course, as pointed out during oral argument, her claim would be subject to the applicable policy deductible of $250,000. None of this changes our analysis, as the entire dispute is over whether the EEOC lawsuit *as a whole* constitutes a "claim" and whether Cincinnati is thus liable for the cost of the EEOC suit *as a whole*. Cracker Barrel has presented the Sucich claim only as an anchor for the EEOC suit, not as a separate claim entitled to coverage.

- 15 -

No. 11-6306
*Cracker Barrel v. Cincinnati Ins. Co.*

## C.  Duty to Defend

Because Cincinnati has a duty to defend only "claims" first made during a "policy period," Cracker Barrel's duty to defend claim fails.  It is true that under Tennessee law, "the insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery." *Moore & Assocs., Inc.*, 216 S.W.3d at 305.  This applies, however, only when  the complaint alleges facts under which the insured could possibly recover.  Here, because the duty to defend is triggered upon a "claim" first made during a "policy period" and the EEOC claim is not such a claim, the complaint did not allege any damages for which there was a potential basis for recovery.  Thus, Cincinnati did not have a duty to defend.  *See, e.g.*, *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996) (finding no duty to defend where insurance policy did not cover the damage alleged in the pleadings).

## D.  Bad-Faith Claim

Lastly, Cracker Barrel argues that the district court erred in dismissing its bad-faith claim under Tenn. Code. Ann. § 56-7-105(a).  This statute gives a cause of action to an insured for bad-faith refusals to honor an insurance policy, allowing the insured to recover, in addition to the loss, up to 25% of the liability for the loss.  Because the first element of a bad-faith claim is that the insurance policy has become due and payable, *see Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986), Cracker Barrel's claim fails.

### III.  CONCLUSION

For the reasons above, the judgment of the district court is AFFIRMED.

- 16 -